UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RODNEY BERNARD BARNO, CDCR #V-69078 | Civil No.07-cv-1373 WMc |
| Plaintiff, | **ORDER GRANTING DEFENDANTS' MOTION TO DISMISS [DOC. NO. 63.]** |
| v. | |
| STUART RYAN; JEAN WOODFORD; CORTEZ, Correctional Counselor; HOMER, Correctional Counselor, | |
| Defendants. | |

**I. Introduction and Procedural History**

In this prisoner civil rights case, Rodney Bernard Barno ("Plaintiff") is proceeding *pro se* and *in forma pauperis* ("IFP") pursuant to 42 U.S.C. § 1983 and 28 U.S.C. § 1915(a). Currently pending before the Court is Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint. [Doc. No. 63.] Plaintiff filed a Second Amended Complaint ("SAC" at Doc. No. 61), on December 29, 2008 following the District Court's November 17, 2008 Order granting Plaintiff leave to amend his Fourteenth Amendment claim only. [Order Adopting Report and Recommendation, Doc. No. 55.] Specifically, the District Court stated:

> "Although the alleged facts fail to support a due process claim, the court grants Plaintiff leave to amend. In doing so, Plaintiff must demonstrate a constitutionally-protected interest was affected by his initial misclassification. Plaintiff's classification, commitment to administrative segregation, and temporarily restrict visitation rights do not provide bases for recovery under the

1    Fourteenth Amendment.  [citations omitted.]  **If Plaintiff chooses to amend, Plaintiff must**
2    **allege facts, such as particular conditions of his administrative segregation or other**
3    **coercive treatment, to show an 'atypical and significant hardship' resulted from the**
4    **misclassification process**."
5 [Doc. No. 55 at 4:24-55.] [emphasis added.]

6    Defendants move to dismiss Plaintiff's Second Amendment contending Plaintiff has failed "to
7 allege facts beyond those alleged in his First Amended Complaint" as required by the District Court.
8 [Doc. No. 63 at 2:13-16.]

9    On February 11, 2009, the parties jointly moved to refer this matter to Magistrate Judge
10 McCurine for all purposes. [Doc. Nos. 67, 70.]  After reviewing the pleadings, parties' briefs and
11 exhibits filed in support thereof, for the reasons set forth below, the Court **GRANTS** Defendants'
12 Motion to Dismiss as discussed in detail below.

13    **II.  Factual Background**

14    Plaintiff alleges that on March 1, 2005, he was transferred to the R.J. Donovan Correctional
15 Facility ("RJDCF") for intake and processing.  (SAC at p. 3, para. 10.)  During his placement at the
16 RJDCF, Plaintiff alleges correctional officer Defendant Cortez "made notations in plaintiff's prison file
17 he had (sic) a sex offense. (SAC at p. 4, para. 11.)  Plaintiff contends he "was not afforded due process
18 on the matter" and "[n]o procedures were given." *Id.*

19    On August 2, 2005, Plaintiff was transferred from RJDCF to Calipatria State Prison.  (SAC at p.
20 4, para. 12.)   Plaintiff alleges that upon his arrival at Calipatria, he was placed in administrative
21 segregation. *Id.*  On August 18, 2005, Plaintiff was called before the Institution Classification
22 Committee ("ICC") without prior written notice of the hearing.  *Id.*  As a result of the hearing, Plaintiff
23 alleges the warden of Calipatria, Defendant Ryan, classified Plaintiff as a sex offender and restricted his
24 visits with minors pending receipt and evaluation of the arrest report describing the conduct in question.
25 (SAC, p. 4-7, paras. 12-13.)  Plaintiff alleges his "due process rights were violated" at the August 18,
26 2005 hearing.  (SAC at p. 4, para. 13.)
27 ///
28

On September 8, 2005, Plaintiff was transferred to the Corcoran State Prison. (SAC, p. 4, para. 14.) On or about, September 20, 2005, the classification committee determined that no "R" suffix was required after review of the requested arrest report. (SAC, p. 5, para. 14.) The classification committee also removed the visiting restriction with minors. *Id.*

On December 7, 2006, Plaintiff was transferred back to the RJDCF. (SAC, p. 5, para. 16.) On December 21, 2006, Plaintiff alleges an Institutional Classification Committee hearing was held without advance written notice. *Id.* Plaintiff states the topic of sex offenses was never discussed during the hearing. Nevertheless, after the ICC hearing, a classification document indicated Plaintiff was a sex offender. (SAC, p. 5, para. 17.) Plaintiff contends "no due process was afforded" to dispute the classification error. *Id.*

On or about July 23, 2007, Plaintiff alleges RJDCF correctional counselor, Defendant Homer, released him from employment at the medical clinic where he was assigned. (SAC, p.6, para. 22.) Plaintiff states an Officer Soto told him he was removed from the position "due to a 'hidden sex offense'." *Id.*

Plaintiff contends that on September 4, 2007, he went before a RJDCF committee for classification review where he was again labeled a sex offender "without prior 72 hour notice, due process or fair procedures." (SAC, p. 1, para. 20.)

In October 2007, Plaintiff states he learned about a memo in the visiting system computers which suggests plaintiff had/has "a sex crime and/or a child victim." (SAC, p.6, para. 19.) Plaintiff contends he did not have "due process or fair procedures to defend against this memo in the system." (SAC, p.6, para. 19.)

Plaintiff seeks "a preliminary and permanent injunction ordering the defendants Cortez and Homer to stop classifying and/or labeling plaintiff a sex offender" and "to restore plaintiff's prison file [and medical file] to its original and initial position before these violation occurred and to place a memo in the files ordering future reviewers not to label plaintiff a sex offender in the event he transfers." (SAC, p.9, para. 2-3.)

///

///

**III.  Discussion**

    **A.**    <u>**Motion to Dismiss Under Rule 12(b)(6) - Standard of Review**</u>

The Court must dismiss a cause of action for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12 (b)(6).  A motion to dismiss under Rule 12(b)(6) tests the complaint's sufficiency.  *See North Star Int'l v. Arizona Corp. Comm'n*., 720 F.2d 578, 581 (9th Cir. 1983).  All material allegations in the complaint, "even if doubtful in fact," are assumed to be true.  *Id.*  The court must assume the truth of all factual allegations and must construe them in the light most favorable to the nonmoving party."  *Gompper v. VISX, Inc*. 298 F.3d 893, 895 (9th Cir. 2002); see also Walleri v. Fed. Home Loan Bank of Seattle, 83 F.3d 1575, 1580 (9th Cir. 1996).

As the Supreme Court recently explained, "While a complaint attacked by a Rule 12 (b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1964 (2007).  Instead, the allegations in the complaint "must be enough to raise a right to relief above the speculative level."  *Id.* at 1964-65.  A complaint may be dismissed as a matter of law for lack of a cognizable legal theory or for insufficient facts under a cognizable theory.  *Robertson v. Dean Witter Reynolds, Inc. 749* F.2d 530, 534 (9th Cir. 1984).

Where a plaintiff appears *in propria persona* in a civil rights case, the court must also be careful to construe the pleadings liberally and afford plaintiff any benefit of the doubt.  *See Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 623 (9th Cir. 1988).  However, at a minimum, even a *pro se* plaintiff must allege with some degree of particularity acts in which defendants engaged in order to support his claim.  *Jones v. Community Redevelopment Agency,* 733 F.2d 646, 649 (9th Cir. 1984).  A court may not "supply essential elements of the claim that were not initially pled."  *Ivey v. Bd. of Regents of the University of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).

**B. <u>14th Amendment – Due Process Clause</u>**

The Due Process Clause prevents prisoners from being deprived of liberty without due process of law.  *Wolff v. McDonnell*, 418 U.S. 539 (1974).  In order to state a claim for deprivation of procedural due process, a plaintiff must first establish the existence of a liberty interest for which the protection is

sought. *Board of Regents v. Roth,* 408 U.S. 564, 569-70 (1972) (explaining the Due Process Clause does not trigger the need for procedural protections in every instance involving a state's deprivation of an individual's liberty, only when there is a cognizable liberty interest at stake.)  Liberty interests may arise from the Due Process Clause or from state laws and regulations. *Hewitt v. Helms*, 459 U.S. 460, 466-68 (1983).  The Due Process Clause itself does not confer a liberty interest in a particular classification status. *Hernandez v. Johnston*, 833 F.2d 1316, 1318 (9th Cir. 1987); *Moody v. Daggett*, 429 U.S. 78, 88 fn. 9 (1976).   Accordingly, the Court must determine whether a liberty interest has been created by state law.  In order to find a liberty interest conferred by state law, the court *must focus on the nature of the deprivation* rather than on the language of any particular regulation to avoid involvement of the federal courts in day-today prison management. *Sandin v. Conner*, 515 U.S. 472, 479-483 (1995)(emphasis added).  As the District Court correctly stated in its Order Adopting the Report & Recommendation, the plaintiff "must show conditions which 'impose[] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life'" in order to demonstrate a constitutionally-protected interest was harmed by his classification status. [Doc. No. 55, 4:10-12.; *Sandin*, 515 U.S. at 484.]

### 1. No Constitutional Liberty Interest in the "R" Suffix Custody Classification

In *Neal v. Shimoda*, 131 F.3d 818, 828 (9th Cir. 1997), the Ninth Circuit determined that labeling a prisoner with a sex offender classification may implicate a liberty interest subject to due process protection in some circumstances. Specifically, the *Neal* court reviewed a due process challenge to the state of Hawaii's sex offender treatment program which designated persons convicted of certain sex crimes as sex offenders and required their participation in a treatment program before said prisoners could be eligible for parole. *Neal*, 131 F.3d at 821-22.  The Ninth Circuit found a liberty interest was implicated under the circumstances of that case because *in addition* to being classified as a sex offender, the prisoner was required to complete a mandatory treatment program as a pre-requisite to parole. *Neal*, 131 F.3d at 830 ("[T]he stigmatizing consequences of the attachment of the 'sex offender' label *coupled with the subjection of the targeted inmate to a mandatory treatment program* whose successful completion is a precondition for parole eligibility create the kind of deprivations of liberty that require

procedural protections.")(emphasis added.); *Kritenbrink v. Crawford*, 457 F. Supp.2d 1139, 1149 (D. Nev. 2006)("the stigmatizing label in conjunction with [certain] disadvantages goes beyond the typical hardships of prison life.")

In his Second Amended Complaint, Plaintiff alleges an "'Atypical and Significant Hardship' [was created by Defendants] by subjecting plaintiff to risky and dangerous conditions which is different from those ordinarily experienced by the inmate population serving their sentences in the customary fashion." (SAC at p. 8, para.. 26.) Plaintiff alleges no mandatory program or other involuntary treatment attendant to the "R" suffix classification. Instead, the risky and dangerous conditions to which Plaintiff refers include notations, letters and/or memos detailing his "R"suffix evaluation and classification history in various prison files. (SAC at pp.4-6, paras.11- 19; *see also* Plaintiff's Opposition, Doc. No. 65-2 at p. 3 ("Plaintiff further points out that his substantive due process rights were violated when the defendants continued to misclassify plaintiff as a sexual offender.") Plaintiff simply fails to demonstrate how the information in his prison files, even if erroneous, has subjected him to atypical and significant risks or dangers beyond typical hardships one expects to experience in prison. In *Stevens v. Robles*, 2008 WL 667407 (S.D. Cal.), the district court was presented with a similar case where a California state prisoner was wrongfully assigned an "R" suffix and contended "the 'erroneous' placing of the 'R' suffix violates his Fourteenth Amendment Due Process rights because it is predicated 'on a[n] alleged police report not a[n] arrest or conviction for the said offense." *Id.* at *1. The prisoner in *Stevens*, like Plaintiff, was deprived of certain visitation privileges as a result of a sex offender classification. *Id.*   After concluding Plaintiff had not alleged the atypical and significant deprivation required by *Sandin*, the district court dismissed Stevens' first amended complaint without leave to amend for failure to identify a cognizable liberty interest upon which a claim under the Fourteenth Amendment could be based. *Id*. at *8. The district court explained: "a person in plaintiff's position, barred from family visits even though never convicted of a sex offense, may deserve sympathy, but the court is not empowered to act in the absence of a constitutional violation. It may not fashion a remedy in a Section 1983 action without a cognizable liberty or property interest at stake." *Id.*

Here, Plaintiff has failed to articulate a liberty interest implicated by the "R" suffix classification process alone.[1] Without identification of an atypical, significant deprivation *in addition* to erroneous classification, Plaintiff has failed to state a due process claim. *Sandin*, 515 U.S. at 484. Accordingly, no analysis of the procedural protections given to Plaintiff prior to his classification hearings is needed. *Wilkinson v. Austin*, 545 U.S. 209, 224 (2005) (the court need only proceed to analysis of procedural safeguards used after the plaintiff has shown the existence of a constitutionally protected interest with which the state has interfered); *Jackson v. Carey*, 353 F.3d 750, 755 (9th Cir. 2003) (explaining that only in cases where a liberty interest is at stake must the court evaluate whether the process received comports with procedural due process requirements)(quoting *Sandin*, 515 U.S. at 484). As the Court has found Plaintiff's Second Amended Complaint fails to allege a constitutional violation, Defendants' motion to dismiss for failure to allege a claim upon which relief may be granted is **GRANTED.**

### IV. Qualified Immunity

Qualified immunity shields government officials "[f]rom liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)(citations omitted). To analyze a qualified immunity claim, a court must first determine whether, taken in the light most favorable to the party claiming injury, the facts alleged show the defendants violated the claimant's constitutional rights. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). If the answer is no, the analysis and inquiry into qualified immunity ends. *Id.* Here, Plaintiff has not adequately alleged a Fourteenth Amendment claim. Therefore, the Court need not analyze Defendants' qualified immunity claims. Accordingly, Defendants' claim for qualified immunity is **DENIED as moot.**

///

///

---

[1] In Plaintiff's opposition brief, he contends Defendants attempted to mislead the Court "by generating a chrono for plaintiff's prison file allegeing [sic] 'No 'R' suffix ever affixed,' which is fabricated." Doc. No. 65-2 at p. 4.] Plaintiff reaffirms the assignment of an "R" suffix classification to him by referring the Court to Exhibits 10 and 13 of the Second Amended Complaint. *Id.* When considering Defendants' motion to dismiss, this Court has accepted as true all allegations of material fact in Plaintiff's complaint and construed all facts, including those relating to classification, in the light most favorable to plaintiff as is required under federal law. *Resnick v. Hayes*, 213 F.3d 443, 447 (9th Cir. 2000); *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998). Accordingly, the Court's evaluation of the claims asserted in Plaintiff's complaint assumes Plaintiff received an "R" suffix.

### V. Dismissal of Director Defendant Woodford/Dovey

In Plaintiff's Second Amended Complaint he states he "has dropped defendant Woodford." (SAC , p. 1.)  The Court notes that Defendant John Dovey, the current director of the California Department of Corrections and Rehabilitation, was automatically substituted in place of original Defendant J. Woodford under Federal Rule of Civil Procedure 25(d)(1).  Accordingly, the Court construes Plaintiff's statement as a request to dismiss current director Defendant Dovey and **GRANTS** Plaintiff's request for dismissal.

### VI. CONCLUSION AND ORDER THEREON

For the foregoing reasons, **IT IS HEREBY ORDERED** Defendants' motion to dismiss is **GRANTED** for failure to state a claim upon which relief may be granted.  Further amendments will not cure the deficiencies of Plaintiff's claim, therefore the Second Amended Complaint is **DISMISSED** without leave to amend, terminating this case.

**IT IS SO ORDERED:**

DATED: February 19, 2009

*[signature]*

Hon. William McCurine, Jr.
U.S. Magistrate Judge, U.S. District Court